UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WAYNE WILLIAM TUCKER,

    Plaintiff,

v.                                                  Case No. 5:18cv96-MCR-HTC

MARK S. INCH,[1]
WARDEN RICHARD JOHNSON,
ASSISTANT WARDEN V. ROLAC,
COLONEL J. HOLDEN,
MAJOR HASKET,
MRS. PITTMAN,
HEATH HOLLAND,
CAPTAIN KEES, and
C. NEEL,

    Defendants.

_____/

ORDER AND
REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983. ECF Doc. 15. The undersigned has screened the amended complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2) and respectfully recommends that several of Plaintiff's claims be

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the Defendant. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Mark S. Inch as the Defendant.

dismissed under 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. The undersigned is also ordering Plaintiff to submit service copies to the Court for service of the complaint on those defendants against whom claims have been asserted that are not being recommended for dismissal.

## I. Background

The court accepts all well-pleaded factual allegations of the amended complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). Plaintiff is a prisoner in the Florida Department of Corrections ("FDOC") serving a sentence of life with mandatory 25-years without parole for sexual battery on a child. ECF Doc. 15 at 5. At the time he filed the amended complaint, he was housed at Okaloosa CI and was 57 years old, 5'11", 120 pounds with a "life-threatening medical condition." (He did not disclose what the condition was). *Id*. Because of his offense, age, stature and health, he was originally classified in the FDOC as "closed custody level Ho4" inmate required to be housed in a "closed, two-man cell with another elderly inmate behind three locked doors." *Id.*

On December 22, 2016, he was transferred to Jackson Correctional Institution ("Jackson CI"), a "closed custody high-security facility" according to Plaintiff. *Id.*

Jackson CI has a dorm with two-person, elderly inmate cells. *Id.* at 6, ¶ 14. However, when Plaintiff arrived at Jackson CI, he was assigned to "Dorm D-2 which is an open bay dorm behind one door" despite him having been in two-man cells for twenty years in the FDOC. *Id.* at ¶ 20. Plaintiff promptly advised a John Doe Sergeant (who does not appear to be a named defendant) of his classification level and requested to be housed in a two-man cell with elderly inmates. *Id.* at ¶ 21. The sergeant promised to contact classification at Jackson CI but asked Plaintiff to report to the open bay dorm in the meantime or be sent to confinement for disobeying an order. The Plaintiff opted to report to the open bay dorm. *Id.* at ¶ 22.

Plaintiff claims that "institutional records and incident reports" would establish widespread corruption, lack of oversight over prisoners, gang and drug activity, contraband, violence, sex and other "conditions posing a substantial risk of serious harm" frequently occurred in the open bay dorm. *Id.* at ¶¶ 24-25. He also claims that "at Jackson CI, there are documented systematic deficiencies in staffing that make suffering inevitable because the prison is grossly understaffed." *Id.* at ¶¶ 23, 15. Plaintiff also alleged various ways in which the understaffing at Jackson CI caused the open bay dorms, housing 170 inmates, to not be monitored for long periods of time, "leaving the unmonitored inmates to do what they please" including "assaults, beatings, stabbings, fights, and stealing of inmates lockers and personal property." *Id.* at ¶¶ 24, 44-48.

Plaintiff alleges that within a week of being housed in the open bay dorm he observed an inmate openly possessing a knife and heard of five inmate stabbings, some resulting in death. *Id.* at ¶¶ 26-28. After a week, Warden Johnson, Asst. Warden Rolac, Colonel Holden, and Major Hasket performed a housing inspection on the open bay dorm. Plaintiff informed all four individuals that he was improperly housed at the open bay dorm, what his classification level was, and that this misassignment posed "an unreasonable risk of serious harm to my future health and safety." *Id.* at ¶ 30. The officials took down his name and FDOC number, but stated, "This is an overflow dorm, they must have put you in here when they did not have proper housing as we are limited on two-man cells. The only way we are going to move you is to go to confinement. Do you want to 'Check in'?" *Id.* Plaintiff answered that he did not want to go to confinement, and "they" answered, "Then you'll be alright here." *Id.*

Plaintiff also alleges that he made the four individuals aware (1) of the danger of not having the metal storage lockers bolted down because inmates could use them as weapons or take them away to steal from them and (2) that gang members were stealing non-gang members like Plaintiff's property or were forcing them to "pay tax" to live in the dorm or "bad things would happen." *Id.* at ¶¶ 31-32. Plaintiff was not moved from the dorm.

Plaintiff alleges that on January 16, 2017, two inmates, that Plaintiff knew to be in a Spanish-speaking gang, confronted him while Plaintiff was sitting on the toilet. *Id.* at ¶ 49. One put a homemade knife to his throat and demanded that Plaintiff open his locker so they could take his stuff. *Id.* "To show they were serious, they cut Plaintiff on his cheek and neck with the homemade knife," according to Plaintiff. *Id.* at ¶ 50. He also received bruises on both his arms. *Id.* at ¶ 68. Plaintiff acted like he was going to comply but then stopped at the officer's station causing the inmates to break off the threat. *Id.* at ¶ 51. Plaintiff later approached the leader of the gang and was told by the leader that he was expected to pay tax or he would be stabbed. *Id.* at ¶ 53.

Plaintiff then contacted the captain who was the officer-in-charge and informed him of the knife attack and threat and requested to be moved to another dorm. *Id.* at ¶ 54. The request was denied with the statement that the only transfer possible was a move to confinement. *Id.* Within a week, however, "two other white non-gang members in the dorm" were being "put down" by the same gang members, complained of the incident to the same O.I.C. captain above, and were promptly moved to another dorm. *Id.* at ¶ 55.

The next day, on January 17, 2017, while Plaintiff was away from the dorm, his entire locker was stolen along with $400.00 of personal items. *Id.* at ¶ 57. When Plaintiff returned, the gang leader warned that if Plaintiff attempted to report the

theft to the officer's station he would be stabbed and killed. *Id.* at ¶ 58. Two gang members were stationed up by the officer's station "both with a knife on them showing them to me." *Id.* Plaintiff waited until roster count five hours later to report to a female sergeant (unknown name and not a defendant) the theft and threat and "had to check in and go to confinement" to avoid being killed. *Id.* at ¶ 59.

Before Plaintiff left the dorm to go to confinement, Captain Kees (the captain on duty at the time), Plaintiff, and the dorm sergeant viewed the recorded security tape and observed the tape showing three inmates dragging his locker into the bathroom and emerging with large, full canteen bags. *Id.* at ¶ 61. The dorm sergeant identified the three inmates. *Id.* Plaintiff alleges that despite being told about the incident, the homemade knives and the use of cellphones, and witnessing the theft on tape, prison authorities did not arrest the three inmates shown on tape or order a shakedown or property search in the dorm. *Id.*

Plaintiff claims that his rights under the First, Eighth and Fourteenth Amendments were violated. He names nine (9) individuals as Defendants in their individual and official capacity:

<u>Mark S. Inch, the Secretary of FDOC</u> – Plaintiff does not mention the Secretary in the statement of facts but alleges "The history of widespread abuse and stabbings as documented at Jackson CI clearly puts the above responsible supervisors on notice

of the need to correct the alleged deprivation to Plaintiff's safety, health, and his property, and they failed to so do. And the improper custom or policy above lead to the deliberate indifference to, and violated, Plaintiff's protected federal constitutional rights." ECF Doc. 15 at ¶ 39.

The only claim against Classification Supervisor Pittman was for allowing Plaintiff to be placed in the open bay dorm even though his FDOC classification was for a two-man cell with an elderly cellmate. *Id.* at ¶¶ 6 & 20.

Warden Johnson, Asst. Warden Rolac, Colonel Holden and Major Haskett were alleged to have violated Plaintiff's rights by placing him in the open bay dorm and then by not correcting his assignment after being informed of it and being aware of the dangers there.

Colonel Holden is also alleged to have denied his grievance and the only claims against Assistant Warden Health Holland and Secretary Representative Neel relate to the procedures used during the review of Plaintiff's grievances.

The only allegation regarding Captain Kees is that he reviewed the tape of the theft of the locker but took no actions against the three inmates responsible.

## II. Analysis

### A. <u>28 U.S.C. 1915 Prescreening Standard</u>

Because Plaintiff is a prisoner, the Court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The Court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the

remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (quoting *Iqbal*, 556 U.S. at 679)).

B. **First Amendment Claims**

Plaintiff argues that he established a "First Amendment retaliation claim" because "his speech or act was Constitutionally protected, and he suffered an adverse action from prison officials." ECF Doc. 15 at ¶ 81. To illustrate which "speech or act" he was describing, Plaintiff cited ¶¶ 21-23, 29-43, 54-56, 61-65 in the amended complaint. *Id.* These paragraphs describe Plaintiff complaining to prison officials that he was mis-assigned, threatened, stolen from or battered and that prison officials took no action. While these allegations may support an Eighth Amendment failure to protect claim, such conduct does not state a First Amendment retaliation claim.

The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *See Crawford-El v. Britton*, 523 U.S. 574, 588 n.10, 592–93 (1998); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted). To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing *Bennett v. Hendrix*,

423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); *Cummings v. Harrison*, 695 F. Supp. 2d 1263, 1274-75 (N.D. Fla. 2010).

Here Plaintiff does not allege facts supporting the second and third elements, a causal, retaliatory relationship between the adverse actions – the threats, theft and battery – and the protected speech. That is, Plaintiff does not allege that Defendants allowed him to be threatened, stolen from and battered (or failed to protect him from such conduct) in retaliation for him complaining about his classification. Instead, he alleges that he complained about his classification to try and stop threats, theft and batteries that were already occurring. This type of claim triggers the Eighth Amendment's duty to protect, not the First Amendment's protection against retaliation. *See Smith v. Mosley*, 532 F.3d 1270, 1279 (11th Cir. 2008) (Plaintiff did not show requisite causal connection because adverse action would have occurred whether Plaintiff had complained or not.). Plaintiff's First Amendment claims are thus due to be dismissed.

### C. Fourteenth Amendment Claims

Plaintiff asserts two types of Fourteenth Amendment claims. First, Plaintiff alleges that he was a "'class of one … intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." ECF Doc. 15 at ¶ 90. Regarding this claim, he refers back to paragraphs in the amended complaint which allege that Plaintiff complained to the officer-in-charge

captain but was not transferred from the open bay dorm while two other white non-gang members complained to "the same O.I.C Captain above, [and] they were promptly moved to another dorm." *Id.* at ¶¶ 54-56.

"To prevail on a 'class of one' equal protection claim, Plaintiffs must show they were intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263-64 (11th Cir. 2010) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007)). To be "similarly situated," the comparators must be "prima facie identical in all relevant respects." *Griffin*, 496 F.3d at 1204. For this reason, Plaintiff was warned by the amendment order at ECF Doc. 11 that he needed to allege a "similarly situated" inmate who was treated differently than he was. *Id.* at 13-14.

Here, Plaintiff failed to allege the offenses, stature, age, or health status of the two inmate comparators. These factors are relevant because the reason given by the prison officials for denying a transfer was the unavailability of two-inmate cell space at Jackson CI. ECF Doc. 15 at ¶ 30. From Plaintiff's allegations, a factfinder could not determine if the two other inmates required such a cell arrangement. They may have been transferred to another open bay dorm. Plaintiff has thus not alleged that they are "prima facie identical in all relevant respects" despite being warned to do

so. *See Griffin*, 496 F.3d at 1204. Therefore, the Plaintiff's Fourteenth Amendment claim based on disparate treatment is due to be dismissed.

Plaintiff's second claim under the Fourteenth Amendment relates to the process he received during the handling of his grievances. *See* ECF Doc. 15 at ¶¶ 92-101. The Eleventh Circuit has held that the provision of an administrative grievance process, including appeals, is not constitutionally mandated. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (prisoners have no constitutionally protected liberty interest in having access to prison grievance procedures); *see also Allen v. Fla. Dep't of Corr.*, 578 F. App'x 836, 839 (11th Cir. 2014) (holding that allegations that a prison mishandled grievance procedures failed to state a due process violation because prisoners have no constitutionally protected liberty interest in access to prison grievance procedures); *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (holding that a prisoner had no constitutionally protected liberty interest in access to prison's grievance procedure); *Mathews v. Moss*, 506 F. App'x 981, 984 (11th Cir. 2013) (allegations that prison grievances were either ignored or wrongly decided, or that prison officials did not properly follow grievances procedures, failed to state a constitutional violation). Thus, a prisoner fails to state a Fourteenth Amendment Due Process violation by alleging that prison officials mishandled an appeal. *Vega v. Jones*, No. 3:15-CV-407/MCR/EMT, 2016 WL 5024212, at *1 (N.D. Fla. Sept. 16, 2016) (adopting *Vega*

*v. Jones*, No. 3:15-CV-407/MCR/EMT, 2016 WL 5019197 (N.D. Fla. Mar. 21, 2016)). Plaintiff's Fourteenth Amendment due process claims are therefore also due to be dismissed.

### D. Eighth Amendment Claims

Plaintiff claims that each of the defendants were aware of a serious risk of harm to Plaintiff – an undersized, elderly, non-gang-member inmate with a health condition – if he were placed in an open bay dorm with a known, documented history of inmate-on-inmate threats, attacks, theft and extortion. By disregarding that risk and placing him in the dorm, Plaintiff argues, Defendants violated his rights under the Eighth Amendment. ECF Doc. 15 at ¶¶ 82-89. As stated above, however, while Plaintiff lumps all defendants in his Eighth Amendment failure to protect claim, there are no factual allegations to support this claim as to Assistant Warden Holland, Secretary Representative Neel or Captain Kees.

In fact, Plaintiff does not expressly make any claim against Captain Kees, nor could he. His allegations against Captain Kees were that Kees observed the videotape showing that three inmates had stolen Plaintiff's locker, but "no one was placed into hand cuffs, nor placed into confinement." ECF Doc. 15 at ¶ 61. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973);

*Smith v. Shook*, 237 F.3d 1322 (11th Cir.2001).  Thus, this Court has no jurisdiction to require the prison to prosecute or sanction the three inmates.

Plaintiff also alleges in the same paragraph that prison officials did not shakedown the dorm to find the weapons used by the inmates.  ECF Doc. 15 at ¶ 61.  However, Plaintiff also admits that he had already agreed to go to confinement and is now at a different prison.  *Id.* at ¶ 59.  Thus, any failure to protect claim against Captain Kees based on this interaction would be moot.  Plaintiff therefore states no claims against Captain Kees, and he should be dismissed from this case.

Regarding the claims against the other defendants, while it is true that "[i]nmates also have no protected liberty interest in a particular custody classification." *See Meachum v. Fano*, 427 U.S. 215, 223-25 (1976) (concluding no liberty interest in discretionary transfer to a maximum security state prison); *Moody v. Daggett*, 429 U.S. 78, 88 n. \9 (1976) (concluding no due process protections required for prisoner classification and eligibility for rehabilitative programs in federal prison), that does not mean that any claim is barred if it involves where an inmate is assigned.  Instead, such claims can be brought under the Eighth Amendment's duty-to-protect jurisprudence.

The Eighth Amendment "imposes [a] dut[y] on [prison] officials" to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (quotation marks omitted). In particular, under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citing various courts of appeals) (quotation marks omitted and alterations adopted); *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616-17 (11th Cir. 2007). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks omitted) (alterations adopted) (emphasis added); *see also Farmer*, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). To make out a deliberate indifference failure-to-protect claim, a plaintiff must allege "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks omitted).

When examining the first element—a substantial risk of serious harm—the court uses an objective standard. *See Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544 (2007). The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." *Rodriguez*, 508 F.3d at 617 (citing *Farmer*, 511 U.S. at 829 and other cases) (footnote omitted). To satisfy the objective component, a plaintiff must produce evidence that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.*

With regard to the subjective component of the second element—i.e., the defendant's actual knowledge that an inmate faced a substantial risk of serious harm—the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Rodriguez*, 508 F.3d at 617 (quoting *Farmer*, 511 U.S. at 842) (quotation marks omitted).

Here, as to the first element Plaintiff alleged a "substantial risk of serious harm" by alleging (1) he was threatened with and cut with a knife, (2) he was subjected to extortionate threats by gang members; and (3) the risk of inmate-on-inmate violence was constant and excessive rather than occasional, isolated attacks.

*See Purcell v. Toombs Cty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) ("an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison where violence and terror reign is actionable."). Also, Plaintiff alleged that he personally informed Defendants Johnson, Rolac, Holden, Haskett, and Pittman about his misclassification and the danger it entailed but none of them transferred him from the open bay dorm.

Also, Plaintiff alleges that the risk of inmate-on-inmate violence in open bay dorms at Jackson CI was well known. *E.g.*, ECF Doc. 15 at ¶¶ 24-26, 44-48. As the Supreme Court held in *Farmer*:

> if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Farmer*, 511 U.S. at 842-43. Plaintiff has alleged such a longstanding, pervasive well-documented risk of inmate attacks in this case.

Accordingly, the undersigned finds that Plaintiff's Eighth Amendment claims against Defendants Inch, Pittman, Johnson, Rolac, Holden and Haskett should be served.

Plaintiff is not responsible for the costs of service, as he is proceeding in forma pauperis. Plaintiff is responsible, however, for providing the Court with six (6) service copies of his amended complaint (ECF Doc. 15). The service copies must be identical to the amended complaint filed with the Court. Upon receipt of the service copies, the undersigned will direct the United States Marshals Service to serve the Defendants.

### III. Conclusion

Accordingly, it is ORDERED:

1. Within **thirty (30) days** from the date of this order, Plaintiff shall submit to the Court six (6) service copies of his amended complaint (ECF Doc. 15). The service copies must be identical to the amended complaint filed with the Court. This case number should be written on each of the copies.

2. Failure to submit the service copies as instructed may result in a recommendation that this case be dismissed due to Plaintiff's failure to prosecute or failure to comply with an order of the Court.

It is also respectfully RECOMMENDED:

1. That the Plaintiff's First and Fourteenth Amendment claims in the amended complaint, ECF Doc. 15, be DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii), for Plaintiff's failure to state a claim on which relief may be granted.

2. That Defendants Holland, Neel and Kees be dismissed and terminated as parties.

3. That the matter be remanded to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against Defendants Inch, Pittman, Johnson, Rolac, Holden and Haskett.

At Pensacola, Florida, this 22nd day of July, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.